In re CEDAR FUNDING, INC., Debtor.

David A. Nilsen, Appellant,

v.

R. Todd Neilson, Appellee.

BAP No. NC–09–1066–JuBaD.
Bankruptcy No. 08–52709.
Adversary No. 08–05312.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 25, 2009.

Filed Nov. 16, 2009.

David A. Nilsen, Monterey, CA, Pro se Appellant.

Cecily A. Dumas, Freidman Dumas & Springwater, LLP, San Francisco, CA, for Todd Neilson.

Before: JURY, BAUM [1] and DUNN, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge.

Appellant David A. Nilsen ("Nilsen") appeals the bankruptcy court's order dismissing his postpetition complaint against the chapter 11 trustee R. Todd Neilson for alleged defamatory statements about Nilsen made during Cedar Funding, Inc.'s ("CFI") bankruptcy proceeding.

This appeal raises two closely related questions, either of which, if answered in the affirmative, would preclude liability against the trustee as a matter of law: whether the trustee was entitled to absolute immunity under federal bankruptcy

---

1. Hon. Redfield T. Baum, Sr., Bankruptcy Judge for the District of Arizona, sitting by designation.

law, and whether his statements were absolutely privileged under California law. We answer both questions in favor of the trustee.

We conclude that the bankruptcy court erred in deciding that the trustee was not entitled to immunity for his allegedly defamatory statements and emphasize that immunity principles may protect a trustee from allegations of libel and slander. The trustee's allegedly defamatory statements were made while performing functions within the scope of his official duties during the administration of CFI's estate. We decide that these functions were judicial in nature because they involved discretionary judgment and were part and parcel of the chapter 11 bankruptcy process. Therefore, we determine that the trustee is protected by absolute quasi-judicial immunity under these facts.

The court's decision on the trustee's immunity, however, was harmless error because we agree with its conclusion that the trustee's statements were absolutely privileged under California law. As a result, the bankruptcy court's dismissal of Nilsen's complaint was appropriate on this ground alone. We AFFIRM.

## I. FACTS

Nilsen was the founder, sole shareholder and president of CFI, a corporation engaged in the mortgage lending business. CFI did not use its own money for loans, but received money from clients which was invested in fractionalized deeds of trust or a mortgage fund[2] securing loans to borrowers. In March 2008, CFI stopped paying investors their interest payments. Several investors commenced an action against CFI and Nilsen in state court which resulted in the appointment of a receiver to replace Nilsen and take control over CFI's assets on May 22, 2008.

A few days later, on May 26, 2008, Nilsen put CFI into a voluntary chapter 11 proceeding presumably so he could regain control of his company. This did not pan out as expected because several investors immediately moved for the appointment of a chapter 11 trustee.[3] The investors' motion was based on some of the same allegations made in the state court receivership action; i.e., that Nilsen was running a "Ponzi" scheme and made insider loans to himself. On June 17, 2008 the bankruptcy court approved the appointment of a chapter 11 trustee.

On August 21, 2008 the trustee convened the § 341(a)[4] meeting of creditors. At that meeting the trustee made certain statements to the investors about Nilsen which Nilsen claimed to be defamatory; for example, that Nilsen had "lied", played a "cruel hoax" on them and, in the trustee's opinion, committed a fraud.

On September 4, 2008 Nilsen sent a letter (the "September 4th Letter") to CFI's investors which contradicted the trustee's statements made at the § 341(a) meeting. Nilsen explained his position re-

---

**2.** On July 11, 2008 the trustee filed a voluntary chapter 11 petition on behalf of the fund named Cedar Funding Mortgage Fund ("CFMF") in the Northern District of California, Bankruptcy Case No. 08–53670. The bankruptcy court granted the trustee's motion to substantively consolidate the estates of CFI and CFMF by order entered on April 20, 2009.

**3.** In mid-June 2008, the United States Trustee filed a separate motion supporting the ap-

pointment of a trustee. *See* § 1104(a) (besides parties in interest, the United States trustee may also request the appointment of a chapter 11 trustee).

**4.** Unless otherwise indicated, all chapter, section and rule references below are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

garding CFI's financial condition and accused the trustee of being deceptive. Nilsen also told the investors that the trustee was dismantling the company and their investments and Nilsen asked each investor to request the court to sever their deed(s) of trust from the bankruptcy estate.

The trustee responded with his own letter to CFI's investors (the "Rebuttal Letter") to ensure they were not misled by Nilsen's September 4th Letter and posted it on the official bankruptcy website of CFI's estate. In that letter, the trustee made several allegedly defamatory statements about Nilsen, summarized as follows:

- Mr. Nilsen was knowingly operating a Ponzi scheme;
- The continuation of the business would only mean more investors would lose their life savings in a hopeless vortex of fraud;
- that if [investors] had been told the truth, Mr. Nilsen's fraud would have mercifully come to a grinding halt;
- that Nilsen should account for all of the funds he misappropriated during his tenure with Cedar Funding;
- that there were others who participated in the financial looting of Cedar Funding; and

- that Mr. Nilsen had gone directly to the investors with an untruthful recitation of the facts.

Nilsen had neither been convicted of any crime nor was he the subject of a criminal investigation at the time the trustee made the above statements.

■ Nilsen commenced an action against the trustee in the Monterey County Superior Court seeking injunctive relief as well as actual and punitive damages on the grounds that the trustee's written and oral statements were defamatory on their face.[5]

On November 7, 2008 the trustee filed a notice to remove the case to the bankruptcy court asserting that Nilsen's state court action was a non-core related proceeding under 28 U.S.C. § 1334(b) and that he consented to the bankruptcy judge's entry of a final order or judgment.[6] The trustee later filed an addendum to the notice of removal which recharacterized Nilsen's action as core because it was inextricably intertwined with the trustee's administration of CFI's estate.

At the same time, Nilsen filed a supplement to the notice of removal, citing 28 U.S.C. § 1334(c)(2) (the mandatory abstention provision)[7] and attached a first

---

**5.** "[I]t is generally held that without leave of the bankruptcy court, no suit may be maintained against a trustee for actions taken in the administration of the estate." *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 945 (9th Cir.2002) (citation omitted). Nilsen did not seek leave from the bankruptcy court before suing the trustee, but the court did not discuss this issue in its written order and this oversight is not the subject of this appeal.

**6.** The Monterey County Superior Court clerk initially refused to accept the trustee's notice of removal. At a June 26, 2009 hearing the state court determined that the clerk's refusal to accept the removal notice was improper.

The matter was then considered removed from state court jurisdiction as of November 13, 2008.

**7.** This section states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced,

amended complaint. The first amended complaint merely added the allegations that the trustee's statements were neither judicial nor pursuant to the court's orders and were beyond the scope of the court's jurisdiction.

On November 17, 2008 the trustee filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6)[8] on the ground that Nilsen's complaint failed to state a claim upon which relief could be granted because (1) the trustee was absolutely immune under federal bankruptcy law and (2) the trustee's statements were absolutely privileged under California law. In opposition, Nilsen asserted that his state court action was not a core proceeding over which the bankruptcy court had jurisdiction and requested the court to remand the action to state court. Nilsen also asserted that the trustee's motion to dismiss should be converted to a motion for summary judgment because it attached Nilsen's September 4th Letter and the trustee's Rebuttal Letter, which were referenced in Nilsen's first amended complaint but not physically attached. Lastly, Nilsen requested the court to grant him permission to file the first amended complaint that he had previously filed in state court.

The bankruptcy court granted the trustee's motion to dismiss by order entered on January 30, 2009. The court determined that Nilsen's defamation action was a core proceeding because the trustee's postpetition statements were made while performing his statutory duties. On this basis, and noting that Nilsen provided no grounds for a discretionary remand, the court denied Nilsen's request for remand to state court. The court held that the doctrine of absolute quasi-judicial immunity did not protect the trustee from Nilsen's allegations of libel and slander, but concluded that California's litigation privilege did.

On February 27, 2009 Nilsen filed his notice of appeal and a motion to extend the time to appeal. The bankruptcy court granted his motion by order entered on May 18, 2009 thereby making his notice filed on February 27, 2009 timely.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2).[9] We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES[10]

■ Whether the bankruptcy court erred

---

and can be timely adjudicated, in a State forum of appropriate jurisdiction.

8. Fed.R.Civ.P. 12(b)(6), *incorporated by*, Fed. R. Bankr.P. 7012, provides that a party may present by motion a defense to a claim for relief in any pleading "for failure to state a claim upon which relief can be granted."

9. The bankruptcy court's jurisdiction is more fully discussed in Section V below.

10. Nilsen lists several issues in his opening brief that were not listed in his Statement of Issues on Appeal. Rule 8006 requires that the appellant, within ten days after filing the notice of appeal, serve on the appellee a statement of issues to be presented. The issues of

whether the trustee improperly removed Nilsen's state law lawsuit or whether the trustee waived his right to removal were not in Nilsen's Statement of Issues on Appeal. Accordingly, those issues are waived. *Woods v. Pine Mountain, Ltd. (In re Pine Mountain, Ltd.)*, 80 B.R. 171, 173 (9th Cir. BAP 1987). Nilsen also raises a new issue in his reply brief regarding the court's bias against him and attaches the court's order denying his motion to disqualify entered on May 12, 2009. Debtor did not appeal that order which became final, and we do not have jurisdiction to review it. *Wiersma v. Bank of the West (In re Wiersma)*, 483 F.3d 933, 938 (9th Cir.2007) ("[T]he failure to timely file a notice of appeal is a jurisdictional defect barring appellate review.").

(a) in determining that Nilsen's postpetition state law defamation action against the trustee qualified as a core proceeding;

(b) in denying Nilsen's request to remand the adversary proceeding to state court;

(c) in denying Nilsen's request to convert the trustee's motion to dismiss to a summary judgment motion;

(d) in holding that the trustee was not entitled to the protection of the absolute quasi-judicial immunity doctrine; [11]

(e) in dismissing Nilsen's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief upon which relief could be granted because California's litigation privilege completely protected the trustee; and

(f) in denying Nilsen's request for leave to amend the complaint.

## IV. STANDARDS OF REVIEW

■ The existence of jurisdiction is a question of law that we review de novo. *Bethlahmy v. Kuhlman (In re ACI–HDT Supply Co.),* 205 B.R. 231, 234 (9th Cir. BAP 1997). We review the bankruptcy court's decision not to remand on an equitable basis for an abuse of discretion. *Id.*

■ We review the bankruptcy court's dismissal of an action under Fed. R.Civ.P. 12(b)(6) de novo. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.,* 572 F.3d 663, 668 (9th Cir.2009). Since we take all allegations of material fact in the complaint as true for purposes of a motion to dismiss, we review the bankruptcy court's decision to deny a grant of immunity to the bankruptcy trustee de novo. *New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1300 (9th Cir.1989). Likewise,

the applicability of California's litigation privilege is a question of law which we review de novo. *Am. Products Co. v. Law Offices of Geller, Stewart & Foley, LLP,* 134 Cal.App.4th 1332, 1343, 37 Cal.Rptr.3d 93 (Cal.Ct.App.2005).

■ We review the bankruptcy court's denial of leave to amend a complaint under the abuse of discretion standard. *Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 677 (9th Cir.1993).

■ On appeal we may affirm the bankruptcy court on any ground supported by the record, even if it differs from the bankruptcy court's stated rationale. *Pollard v. White,* 119 F.3d 1430, 1433 (9th Cir.1997).

## V. DISCUSSION

■ Nilsen raises issues in this appeal regarding the bankruptcy court's jurisdiction to hear the removed action and whether the trustee has a complete defense to Nilsen's action based on immunity principles and the California litigation privilege. We liberally construe Nilsen's pleadings due to his pro se status. *Kashani v. Fulton (In re Kashani),* 190 B.R. 875, 883 (9th Cir. BAP 1995). Before we proceed with our analysis, we observe that the common thread running between the court's jurisdiction, immunity principles and California's litigation privilege is that these issues must be determined in relation to the chapter 11 trustee's duties in a chapter 11 case. Thus, because the trustee's duties provide a framework for evaluating Nilsen's assertions, we briefly summarize them.

■ The trustee's role in a chapter 11 case is statutorily based. Foremost, the chapter 11 trustee is the representa-

---

11. The trustee raised this issue in the bankruptcy court, and the court decided it against him. The trustee places the issue squarely before us now as an additional ground to affirm the bankruptcy court.

tive of the estate. § 323(a). As such, the trustee is charged with various duties listed in § 1106(a), which incorporates some subsections of § 704. Under § 704, the trustee is held accountable for the estate, investigates the debtor's financial affairs, and furnishes information concerning the estate and its administration to parties-in-interest. § 704(2), (4) and (7).

Relevant to this appeal is that the chapter 11 trustee is charged with important investigative and reporting functions under § 1106(a)(3) and (4).[12] In this regard, the trustee investigates "the acts, conduct, assets, liabilities and financial condition of the debtor" along with the operation of the debtor's business and the desirably of its continuance. § 1106(a)(3). The chapter 11 trustee is required to report on his investigation "including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate." § 1106(a)(4). It is not surprising that debtors-in-possession are not charged with these later mentioned investigative and reporting duties because they require impartiality for the protection of creditors and the estate. § 1107(a) (stating that the debtor-in-possession shall perform all the functions and duties of a trustee except for those specified in § 1106(a)(3) and (4)).

Taken together, the chapter 11 trustee's duties demonstrate that he performs many "legal, adjudicative, clerical, financial, administrative, and business functions...." *Castillo,* 297 F.3d at 950–51. Essential to sorting out the trustee's multifaceted duties for purposes of the immunity doctrine is an understanding that the primary goals of a chapter 11 case are the preservation of the business as a going concern and the maximization of the assets recoverable to satisfy claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999). With this background, we now address the issues brought by Nilsen on appeal.

## A. The Bankruptcy Court Had Core Jurisdiction Over Nilsen's Defamation Action

Nilsen's main contention on appeal is that the bankruptcy court lacked subject matter jurisdiction to dismiss or rule on any matters concerning his removed defamation action against the trustee. Nilsen asserts that the trustee's statements were outside the scope of the trustee's duties; that they were neither judicial nor pursuant to court order; that his defamation claim is a personal injury tort which is excluded from the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(O)[13]; and that 28 U.S.C.

---

**12.** Section 1106(a) provides that a trustee shall—

. . . .

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; [and]

(4) as soon as practicable—(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including

any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and (B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.

. . . .

**13.** 28 U.S.C. § 157(b)(2)(O) states that core proceedings include, but are not limited to—

§ 157(b)(5) prevented the bankruptcy court from ruling on the trustee's motion because personal injury tort claims "shall be tried in the district court."[14] We discuss each contention below.

The bankruptcy court's jurisdiction is statutory. Under 28 U.S.C. § 1334(b), the district courts have original, but not exclusive jurisdiction, of all civil proceedings arising under title 11, or arising in or related to cases under title 11. The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

The distinction between "arising under", "arising in" and "related to" jurisdiction can sometimes be obscure, but that is not the case in this appeal. Core proceedings are those "arising under" Title 11 or "arising in" cases under Title 11. The former involve a claim for relief created or determined by a statutory provision of Title 11 while the latter are administrative type matters that arise only in bankruptcy cases. *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir. 1995).

Bankruptcy courts also have jurisdiction over proceedings which are non-core as long as they are "related to" a bankruptcy case. The bankruptcy court appropriately exercises its "related to" jurisdiction when "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Montana v. Goldin (In re Pega-*

*sus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir.2005) (citation omitted). The standard formulation is that an action is "related to" bankruptcy if it "in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (citation omitted).

Based on our review of the record and considering the trustee's duties, we have little difficulty in concluding that Nilsen's state court action against the trustee was a core proceeding over which the bankruptcy court had subject matter jurisdiction. 28 U.S.C. § 157(b); *In re Harris Pine Mills*, 44 F.3d at 1438 (plaintiff's postpetition state law claims asserted against the bankruptcy trustee for conduct inextricably intertwined with the trustee's sale of property of the bankruptcy estate involved a core proceeding). As the bankruptcy court acknowledged, Nilsen's defamation claim was grounded in state law and did not "arise under" Title 11, but was one that arose out of the trustee's performance of his statutory duties during the administration of CFI's estate. On this basis, the court held that Nilsen's defamation action was a core proceeding within its "arising in" jurisdiction. We agree.

The allegedly defamatory statements, from which Nilsen's complaint against the trustee arose, occurred while R. Todd Neilson was acting in his capacity as the chapter 11 trustee of CFI's estate and in furtherance of his statutory duties. The trustee's statements to the creditor-investor body at the § 341(a) meeting pertained to his duties of protecting the business as a going concern and protecting the assets

other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]

14. 28 U.S.C. § 157(b)(5) states in relevant part:

The district court shall order that personal injury tort ... claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

of CFI to maximize their value for the benefit of creditors. Under this umbrella, the trustee's tasks include investigating and reporting on the acts, conduct, assets, liabilities, and financial condition of the debtor.

Likewise, the trustee's allegedly defamatory statements in his Rebuttal Letter did not occur outside the scope of his statutory duties. Nilsen's September 4th Letter accused the trustee of being deceptive and requested the investors to petition the court to sever their trust deeds from the estate. The trustee's statements were therefore inextricably intertwined with his duty to maximize the value of assets for CFI's creditors. Put simply, the trustee had to protect the assets of CFI's estate from further dissipation and harm. Without question, none of the trustee's duties or statements would have arisen but for his role as chapter 11 trustee in CFI's bankruptcy case. Under these circumstances, we conclude that Nilsen's postpetition state court action against the trustee, which was based solely on the trustee's statements made during the administration of CFI's bankruptcy, was a core proceeding.

We reject Nilsen's argument that his defamation claim is a personal injury tort excluded from the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(O). Even assuming defamation is a personal injury tort under California law, as stated earlier, Nilsen's claim arose while the trustee was performing his duties in connection with the administration of CFI's estate. This makes the matter core under 28 U.S.C. § 157(b)(2)(A), and subsection (O) is not implicated. *See Harris Pine Mills,* 44 F.3d at 1437.[15]

■ We also are unpersuaded by Nilsen's argument that the bankruptcy court lacked jurisdiction over his complaint due to the statutory constraint under 28 U.S.C. § 157(b)(5) that personal injury claims shall be tried by the district court. In this Circuit, bankruptcy courts are not divested of pre-trial jurisdiction over matters which they ultimately may be unable to decide. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com),* 504 F.3d 775, 787 (9th Cir.2007).

To illustrate, the Ninth Circuit in *Healthcentral.com* held that the bankruptcy court is permitted to retain jurisdiction over pre-trial matters in an action where a party was entitled to a Seventh Amendment jury trial right in the district court. The court explained that a bankruptcy court's pre-trial management, which could include ruling on a motion to dismiss, would not affect a party's right to a jury trial because "these motions merely address whether trial is necessary at all." *Id.,* citing *City Fire Equip. Co. v. Ansul Fire Prot. Wormald U.S., Inc.,* 125 B.R. 645, 649 (N.D.Ala.1989) ("While motions to dismiss ... may be dispositive, they do not impact on the right to a *jury* trial. They merely involve legal issues as to whether *any* trial is necessary.... The granting of such motions does not deprive a party of a *right* to a *jury* trial.").

The reason for this rule is grounded in principles of judicial efficiency and economy. The Ninth Circuit recognized that, since bankruptcy courts have the power to hear Title 11 cases and enter relevant orders in most cases, it therefore only makes sense to use the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions of the parties for pre-trial matters. *Id.,* 504 F.3d at 787–88.

---

**15.** 28 U.S.C. § 157(b)(2)(O) also excludes only those tort claims which affect the liquidation of the estate or the adjustment of the debtor-creditor relationship. Nilsen's action against the trustee is not such a tort claim.

820

Consistent with *Healthcentral.com*, we hold that any statutory constraint on the court's jurisdiction under 28 U.S.C. § 157(b)(5) does not extend to pre-trial matters. Here, the bankruptcy court ordered the appointment of a trustee and was familiar with CFI's bankruptcy proceeding and the parties' actions before it. Nilsen did not assert that the bankruptcy court's ruling on the trustee's motion to dismiss, although dispositive, deprived him of any rights. Moreover, we can identify no deprivation of rights under these circumstances.

We mention in passing that even assuming Nilsen's defamation claim was non-core, the bankruptcy court could still properly exercise its "related to" jurisdiction over his claim because it undoubtedly would impact the trustee's handling and administration of CFI's estate. *In re Pegasus Gold Corp.*, 394 F.3d at 1193.

 The bankruptcy court also found that Nilsen's "informal request" to withdraw the reference was not properly before the court. We agree because Nilsen did not file a motion to withdraw the reference as required under 28 U.S.C. § 157(d)

(district court may withdraw any case or proceeding upon timely motion of any party.) We finally observe that to the extent Nilsen argues that mandatory abstention was required, the abstention requirements under 28 U.S.C. § 1334(c)(1) or (2) are inapplicable to removed proceedings, since a successful removal effectively extinguishes the parallel proceeding in state court. *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1010 (9th Cir.1997).

For all these reasons, the court properly exercised its "arising in" core jurisdiction over Nilsen's defamation claim.

**B. The Bankruptcy Court Did Not Err In Denying Nilsen's Request For Remand**

 That the matter is core does not preclude a discretionary remand, as provided for by 28 U.S.C. § 1452(b).[16] The statute gives the bankruptcy court a broad grant of authority to remand a previously removed claim for relief "on any equitable ground".[17] Courts may consider up to fourteen factors under this provision.[18] *Citigroup, Inc. v. Pac. Inv. Mgmt.*

**16.** 28 U.S.C. § 1452(b) states in relevant part: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

**17.** The bankruptcy court's decision to remand under 28 U.S.C. § 1452(b) "can be reviewed only by a district court or a bankruptcy appellate panel, and not by a court of appeals or by the Supreme Court." *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (9th Cir. BAP 1999), citing *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).

**18.** The factors are:
(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) pres-

ence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

Co. *(In re Enron Corp.)*, 296 B.R. 505, 508 n. 2 (C.D.Cal.2003).

■ We discern no grounds for the court to exercise discretionary remand in this record. In fact, that the matter is core is a significant factor weighing in favor of adjudicating the dispute in the bankruptcy court. We conclude that the court did not abuse its discretion in denying Nilsen's request for remand.

## C. The Bankruptcy Court Did Not Err In Granting the Trustee's Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6)

As a further preliminary matter, we address Nilsen's argument that the court erred by not converting the trustee's motion to dismiss to a motion for summary judgment. Nilsen argues that the declaration of the trustee's counsel, submitted in support of the trustee's motion to dismiss, contained information "outside the pleadings". Those "outside pleadings" documents were full copies of two letters whose contents Nilsen referenced in his first amended complaint, but which were not physically attached to it.

■ The general rule is that if a document outside the pleadings is considered on a motion to dismiss, the motion shall be treated as one for summary judgment. Fed. Rule Civ. P. 12(d).[19] The incorporation by reference doctrine is an exception to the conversion rule. This doctrine allows the court to consider documents on judicial notice which are referenced in but not physically attached to the complaint, so long as they are essential to the plaintiff's claim and not subject to authenticity challenges. *Janas v. McCracken (In re Silicon Graphics, Inc. Sec. Lit.)*,

183 F.3d 970, 986 (9th Cir.1999). A court's consideration of documents under the incorporation by reference doctrine does not transform the matter into a motion for summary judgment.

On this basis, the bankruptcy court took notice of the letters which were referenced in Nilsen's first amended complaint. The record does not indicate that Nilsen ever questioned the authenticity of either letter submitted by the trustee. We conclude that the court properly considered the letters. Converting the trustee's motion to one for summary judgment was unnecessary.

We will affirm the bankruptcy court's order to dismiss Nilsen's complaint if it appears beyond doubt that he can prove no set of facts in support of his claim that would entitle him to relief. *Educational Credit Mgmt. Corp. v. McBurney (In re McBurney)*, 357 B.R. 536, 539 (9th Cir. BAP 2006). We accept as true all factual allegations in the complaint and construe those facts in the light most favorable to Nilsen. *Id.* If we are satisfied that the deficiencies in the complaint could not possibly be cured by amendment, dismissal without leave to amend is appropriate. *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir.1996).

We now reach the heart of this dispute: whether the trustee has absolute immunity under federal bankruptcy law and California's litigation privilege. We tackle the immunity question first.

### 1. Quasi–Judicial Immunity

■ The bankruptcy court found that quasi-judicial immunity did not shield the trustee from Nilsen's allegations of slander

---

**19.** Fed.R.Civ.P. 12(d), *incorporated by*, Rule 7012 provides in relevant part:

 If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment. ...

and libel. The trustee argues that the immunity doctrine provides an additional ground for us to affirm the bankruptcy court's order. The trustee "bears the burden of establishing that such immunity is justified." *Castillo*, 297 F.3d at 947.

Judges historically have been granted absolute immunity from suits for their judicial acts. *Forrester v. White*, 484 U.S. 219, 225–28, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). An offshoot of judicial immunity is the doctrine of quasi-judicial immunity which extends immunity to nonjudicial officers for "all claims relating to the exercise of judicial functions." *Castillo*, 297 F.3d at 947 (citation omitted).

In *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), the United States Supreme Court set forth a two-part test for determining whether a non-judicial officer is entitled to quasi-judicial immunity. The first inquiry requires the court to inquire thoroughly into the immunity historically accorded the relevant official at common law and the public interest behind it. *Id.* at 432, 113 S.Ct. 2167. The Ninth Circuit in *Castillo* has already conducted this inquiry, concluding that bankruptcy trustees and their predecessor counterparts historically have been afforded absolute quasi-judicial immunity because they perform some functions which are judicial in nature. *Id.* at 950; *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1390 (9th Cir.1987), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988) (citing *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir.1986)). Based on *Castillo*, the trustee may assert a quasi-judicial immunity defense.

The second inquiry requires us to examine whether immunity covers the trustee's functions at issue. We decide questions regarding a trustee's immunity under this inquiry on a case-by-case basis because not all "of the [t]rustee's many functions are covered by absolute quasi-judicial immunity." *Castillo*, 297 F.3d at 953. The rule is that a trustee may be "immune for actions that are functionally comparable to those of judges, i.e., those functions that involve discretionary judgment." *Id.* at 947, citing *Antoine*, 508 U.S. at 436, 113 S.Ct. 2167.

In determining whether a particular function is judicial in nature, we are cautious not to construe the immunity doctrine too narrowly by focusing on the underlying act. Rather, we identify the "ultimate act" in determining whether a particular function is judicial in nature. *Id.* at 952, citing *Ashelman v. Pope*, 793 F.2d 1072, 1075–78 (9th Cir.1986). Accordingly, we do not focus on Nilsen's legal conclusions that the trustee committed libel and slander. This focus begs the underlying question of immunity by misplacing the emphasis.

Here, the trustee made the allegedly defamatory statements while performing the following functions: he convened the § 341(a) meeting; orally reported on his on-going investigation regarding the conduct of prior management, including any facts pertaining to fraud; and posted his Rebuttal Letter on the official website for CFI's bankruptcy estate to inform the creditors about the assets of the estate and protect those assets from further dissipation and harm. As noted earlier, the trustee's communications occurred while he was performing his official statutory duties. *See Mullis*, 828 F.2d at 1390–91 (bankruptcy trustee had absolute quasi-judicial immunity from damages for acts or omissions within the ambit of the trustee's official duties).

The statutory provisions regarding the trustee's duties give the trustee broad discretion and supervisory powers over the administration of a chapter 11 estate. As such, we construe them as inextricably intertwined with the court's functions in the chapter 11 bankruptcy process, which are aimed at preserving the business as a going concern and maximizing the value of assets for creditors. It follows then that the trustee's functions listed above were "essential to the authoritative adjudication of private rights to the bankruptcy estate." *Castillo*, 297 F.3d at 951 ("[Q]uasi-judicial immunity attaches to only those functions essential to the authoritative adjudication of private rights to the bankruptcy estate."). Accordingly, we determine that under these circumstances the trustee is protected by the absolute quasi-judicial immunity doctrine.

In light of our determination, we believe that the bankruptcy court's reliance on *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1304 (9th Cir.1989), and *Lisowski v. Davis (In re Davis)*, 312 B.R. 681, 688 (Bankr.D.Nev.2004), was misplaced. We note that *New Alaska* and the case law relied upon in *Davis* have limited precedential value because they are distinguishable and outdated in light of the Supreme Court's decision in *Antoine*, which instructed us to conduct the two-part inquiry cited above.

In *New Alaska*, the court held that a receiver was not protected under the immunity doctrine for his alleged slander referring to the plaintiff as "his ward". The court's decision was based on its conclusion that the receiver's statement was "not a function" connected with his receivership duties. Here, in contrast, the trustee's alleged defamatory statements were made in connection with performance of his official duties.

The bankruptcy court's other cited precedent, *Davis*, relied primarily on *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989), and the cases cited in *Bennett*, for its conclusion that immunity did not apply to a trustee and his attorney for defamation. Finding *Bennett* not helpful, the bankruptcy court relied upon the decisions cited in *Bennett* as examples of conduct for which the Ninth Circuit had denied trustees immunity. But each of those cases involved situations where the trustee was either negligent in managing the debtor's business or assets or erred outside of the bankruptcy proceeding. *See Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir.1967) (trustee liable for wrongfully possessing real property not belonging to estate); *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357–58 (9th Cir. 1983) (trustee liable for misrepresentations and acting inconsistent with conduct of an ordinary prudent person serving in the capacity of a trustee); *U.S. v. Aldrich (In re Rigden)*, 795 F.2d 727, 731–33 (9th Cir. 1986) (trustee liable for negligence in business judgment); *Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1415 (9th Cir.1985) (trustee liable for improper distribution of funds after chapter 13 proceeding dismissed). None of these cases is factually similar to the trustee's alleged misdeeds here, which revolved around communications to the creditor body which he serves.

Policy also has a role in our conclusions. A trustee's duties to uncover and report on insider fraud or other fraudulent conduct are important ones that should not be compromised by the threat of litigation against a trustee. Granting immunity to bankruptcy trustee's for functions which are judicial in nature is based on a policy of protecting the bankruptcy process.

## 2. California Litigation Privilege

In addition to asserting that he is immune from suit as a court-appointed offi-

cer of CFI's estate, the trustee also contends his statements were absolutely privileged under California law.

■■■ Nilsen cannot maintain his action against the trustee for either libel or slander unless the trustee's allegedly defamatory statements were unprivileged. Cal. Civ.Code §§ 45, 46.[20] California's litigation privilege, codified at Cal. Civ.Code § 47(b) provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. The privilege has its roots in the common law defense to the tort of defamation, but has been applied to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution. *Silberg v. Anderson,* 50 Cal.3d 205, 212, 266 Cal. Rptr. 638, 786 P.2d 365 (1990).

■■ Although the doctrine has been expanded, the underlying policies for the privilege remain unchanged:

First, it affords litigants free access to the courts to secure and defend their rights without fear of harassment by later suits. Second, the courts rely on the privilege to prevent the proliferation of lawsuits after the first one is resolved. Third, the privilege facilitates crucial functions of the trier of fact.

*Lambert v. Carneghi,* 158 Cal.App.4th 1120, 1138, 70 Cal.Rptr.3d 626 (Cal.Ct.App. 2008) (citation omitted). *See also Briscoe v. LaHue,* 460 U.S. 325, 333, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (in applying a similar common law litigation privilege, the United States Supreme Court said " 'the dictates of public policy . . . require[ ] that

the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.' ") The California Supreme Court has held that to effectuate these purposes, the litigation privilege is "absolute in nature." *Silberg,* 50 Cal.3d at 215, 266 Cal.Rptr. 638, 786 P.2d 365.

■■■ There is a four-part test that must be met for application of the privilege: the communication must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Id.* at 212, 266 Cal.Rptr. 638, 786 P.2d 365. The *Silberg* court stated that the third and fourth requirements are construed together; "that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action."[21] *Id.* at 219–20, 266 Cal.Rptr. 638, 786 P.2d 365. It is also noted that the third requirement is not "a test of a participant's motives, morals, ethics or intent." *Id.* We finally observe that the privilege protects only "communicative" conduct and is broadly applied with all doubts "resolved in favor of the privilege." *Lambert,* 158 Cal.App.4th at 1138, 70 Cal.Rptr.3d 626 (citation omitted).

■■ With these concepts in mind, we consider whether the trustee is absolutely protected by the privilege. It is undisputed that the trustee's statements, both oral

---

**20.** Cal. Civ.Code § 45 defines libel as "a false and unprivileged publication by writing...." Cal. Civ.Code § 46 defines slander as "a false and unprivileged publication, orally uttered...."

**21.** Since the *Silberg* decision, a line of cases has nullified the "logical relation" require-

ment because of this statement. *Sacramento Brewing Co. v. Desmond, Miller & Desmond,* 75 Cal.App.4th 1082, 1086, 89 Cal.Rptr.2d 760 (Cal.Ct.App.1999). However, *Silberg* has not been overruled, so we include this requirement.

and written, were communicative, so this threshold issue is met. *Rusheen v. Cohen,* 37 Cal.4th 1048, 1057, 39 Cal.Rptr.3d 516, 128 P.3d 713 (2006). Our review of the record also convinces us that each requirement under the four-part test for application of the privilege has been satisfied here.

■ A bankruptcy proceeding is a judicial proceeding within the scope of California's litigation privilege. *See Sacramento Brewing Co.,* 75 Cal.App.4th at 1086, 89 Cal.Rptr.2d 760 (erroneously captioned notice of motion filed in a bankruptcy proceeding occurred in a judicial proceeding for purposes of California litigation privilege in defamation action). Therefore, the first requirement is met since the trustee made the allegedly defamatory statements in CFI's bankruptcy proceeding. It makes no difference that the trustee made oral statements at the § 341(a) meeting of creditors or that his written statements were posted on the official website of CFI's bankruptcy estate. In either case, his statements are still protected "even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Rusheen,* 37 Cal.4th at 1057, 39 Cal.Rptr.3d 516, 128 P.3d 713 (citation omitted).

The second requirement is met since the trustee made his statements while acting in his capacity as the court-appointed representative of CFI's estate.

■ We construe the third and fourth requirements together. We examine the subject matter of the trustee's statements to determine whether they were made in furtherance of the bankruptcy proceeding and have some connection or logical relation to the bankruptcy proceeding. "[I]t is the subject matter or context of the mis-statement, not the isolated misstatement itself, which must control whether a communication has 'some connection or logical relation to the action.'" *Sacramento Brewing Co.,* 75 Cal.App.4th at 1089–90, 89 Cal.Rptr.2d 760, citing *Silberg,* 50 Cal.3d at 212, 266 Cal.Rptr. 638, 786 P.2d 365. "Otherwise, testimony by a witness could be shorn of its privilege where the witness misnames an unrelated person or business, resulting in defamation. In short, if the misstatement alone had to be logically related to the action, many misstatements—which are, by definition, false—would not be so related." *Id.* at 1090, 266 Cal.Rptr. 638, 786 P.2d 365. That the statements were made as part of the trustee's duties ends the inquiry, without probing their truth or falsity. "And it would be a poor privilege indeed that required the truth of the allegedly defamatory communication to be determined in order to determine the privilege's application." *Id.*

Here there can be no doubt the trustee's allegedly defamatory statements had some relation to the bankruptcy proceeding because they were made while he was performing his statutory duties. The whole purpose of his statements at the § 341(a) meeting was to inform the investors of the results of his investigation into CFI's operations and financial condition. In his Rebuttal Letter, the trustee expressed his concern that the investors were being misled as to CFI's financial viability by the allegedly erroneous information contained in Nilsen's September 4 Letter. Not only did the trustee's statements have some logical relation to the bankruptcy proceeding, they bore directly on the financial condition of CFI and why it was in bankruptcy. As such, the trustee's oral and written communications were absolutely privileged under Cal. Civ.Code § 47(b).[22]

---

22. Although Nilsen alleges that the trustee's statements were not "judicial" and were "be-

yond the scope of the court's jurisdiction" we need not accept those conclusory allegations

The bankruptcy court considered Nilsen's first amended complaint which he had filed in state court (after removal) as his amendment as a matter of right under Fed.R.Civ.P. 15(a).[23] In light of our discussion above, we conclude the deficiencies in Nilsen's complaint could not possibly be cured by amendment. *Dumas*, 90 F.3d at 389.

## VI. CONCLUSION

Based on the foregoing, we agree that the bankruptcy court did not err in dismissing Nilsen's complaint against the trustee, without leave to amend. Accordingly, we AFFIRM.

as true for purposes of a motion to dismiss. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (pleadings that are no more than conclusions are not entitled to the assumption of truth).

**23.** Fed.R.Civ.P. 15, *incorporated by,* Rule 7015 provides that a party may amend its pleading once as a matter of course before a responsive pleading is served. Fed.R.Civ.P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).