**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br>LYNN DEE HARRINGTON,<br>    Debtor. | BAP No. EC-24-1203-BCL<br><br>Bk. No. 19-26964 |
| LYNN DEE HARRINGTON,<br>    Appellant,<br>v.<br>EL DORADO COUNTY, CALIFORNIA,<br>    Appellee. | Adv. No. 20-02017<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher M. Klein, Bankruptcy Judge, Presiding

Before: BRAND, CORBIT, and LAFFERTY, Bankruptcy Judges.

### INTRODUCTION

Appellant, chapter 7[1] debtor Lynn Dee Harrington, appeals a judgment determining that the attorney's fees and costs awarded to El Dorado County under California Code of Civil Procedure ("CCP") § 1038 were excepted from her discharge under § 523(a)(6) and (7). The bankruptcy court determined

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

that the debt was a noncompensatory "penalty" under § 523(a)(7), as well as a debt arising from a willful and malicious injury under § 523(a)(6). *El Dorado Cnty. v. Harrington (In re Harrington)*, 665 B.R. 436 (Bankr. E.D. Cal. 2024). We agree that the award of attorney's fees and costs under CCP § 1038 was nondischargeable under § 523(a)(7), and we AFFIRM.[2]

## FACTS

**A.    Events leading to the award under CCP § 1038**

In 2016, Ms. Harrington, through her counsel, Timothy Hamilton, sued El Dorado County ("County") in the California Superior Court alleging certain tort claims (the "Tort Claims"). Ms. Harrington alleged that a neighboring parking lot constructed by the County had caused excessive amounts of toxic water to flow onto her property and damage her home during heavy rains. The complaint alleged that Ms. Harrington had complied with the jurisdictional requirement of serving a pre-lawsuit tort claim (the "Pre-Litigation Claim") on the County before filing her complaint. Precisely, the complaint alleged that the County acknowledged receiving the Pre-Litigation Claim on April 18, 2016, and that Ms. Harrington received a "right to sue letter." Neither the Pre-Litigation Claim nor a proof of service was attached to the complaint. The County denied receiving the Pre-Litigation Claim or issuing Ms. Harrington a right to sue letter and said it would seek attorney's fees and costs under CCP § 1038 if the litigation continued.

---

[2] Because we are affirming the bankruptcy court's ruling under § 523(a)(7), we do not address its decision to except the debt from discharge under § 523(a)(6). Ms. Harrington has not challenged that ruling in any event.

In May 2017, Ms. Harrington requested leave to file a first amended complaint. Her attached declaration contained a proof of service for the Pre-Litigation Claim on the County dated April 27, 2016, which she stated she received from the process server, Terry Nelsen, in 2016. The official proof of service form, however, bore a footer with a revision date of February 1, 2017. It also contained several mistakes, including misspellings of Mr. Nelsen's last name. Mr. Nelsen later submitted a declaration containing the same 2016 proof of service, stating that it was the true and correct copy he served on the County in 2016. And he presented the same 2016 proof of service at his deposition in 2018. Mr. Nelsen had no explanation for how he could have signed a proof of service form in 2016, when the form did not exist until 2017.

Once the 2017 footer problem was raised, Mr. Hamilton changed his position, stating in a declaration in opposition to the County's pretrial motion for terminating sanctions that the 2017 proof of service was a replacement of the original, and that he secured it from Mr. Nelsen after discovering that the court had lost the original 2016 proof of service. Mr. Hamilton did not explain why he did not inform anyone of this before. Ultimately, the terminating sanctions motion was denied and the matter went to trial.

The Superior Court first tried the issue of whether Ms. Harrington served the Pre-Litigation Claim on the County before filing suit. At trial, Mr. Nelsen admitted that he lied about signing the proof of service in 2016; he did not sign it until 2017. On June 4, 2019, the jury returned a verdict that Ms. Harrington did not serve the requisite Pre-Litigation Claim on the County.

The County obtained a directed verdict in its favor on the Tort Claims.[3]

Thereafter, the County moved for its attorney's fees and costs under CCP § 1038,[4] seeking an award of $143,997.50. The County argued that Ms. Harrington lacked both reasonable cause and good faith in bringing her Tort Claims against the County, and thereafter, in maintaining these frivolous claims upon which the County obtained a directed verdict.

The Superior Court granted the County's CCP § 1038 motion on the basis that the Tort Claims were not brought in good faith and with reasonable cause ("Fee Order"). It awarded the County its reasonable attorney's fees of $121,837.50 and costs of $11,637.85.

The Superior Court found that both Ms. Harrington and her attorney Mr. Hamilton acted without reasonable cause to file and maintain the Tort Claims, when they knew of the obvious falsities in the proof of service and that they did not have a valid proof of service for the Pre-Litigation Claim

---

[3] Ms. Harrington later amended her complaint to add an inverse condemnation claim, which does not require pre-filing service on the County. That claim is still pending in Superior Court.

[4] CCP § 1038(a) provides, in relevant part:

In any civil proceeding under the Government Claims Act . . . the court, upon motion of the defendant . . . shall, at the time of the granting of any . . . motion for directed verdict . . . determine whether or not the plaintiff . . . brought the proceeding with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint[.] If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party.

prior to filing the complaint. The Superior Court found that Mr. Nelsen, Ms. Harrington's sole witness at trial, was "wholly not credible." The Superior Court reasoned that, at best, Mr. Hamilton operated under the assumption that the Pre-Litigation Claim had been served on the County in April 2016, without having proof of service from Mr. Nelsen until May 2017. A reasonable attorney would have obtained the Pre-Litigation Claim and proof of service prior to filing the lawsuit.

The Superior Court also found that Ms. Harrington lacked good faith. She was complicit in the use of the false proof of service, and before seeking leave to file an amended complaint, Mr. Hamilton had declarations from County employees who would have processed the Pre-Litigation Claim stating that they had never seen it, and describing the checks and balances the County uses to prevent such claims from being lost.

Ms. Harrington appealed the Fee Order to the California Court of Appeal, which affirmed. The County was awarded an additional $59,197.50 for its attorney's fees and costs incurred on appeal under CCP § 1038 (together with the Fee Order, the "Fee Orders").

B.    **County's dischargeability complaint**

After Ms. Harrington filed a chapter 7 bankruptcy case, the County sought to except the Fee Orders from discharge under § 523(a)(6) and (7). Over the County's objection, the bankruptcy court granted Ms. Harrington leave to file an amended answer to add the affirmative defense of unclean hands, which she argued was needed for her inverse condemnation claim

and based on her recent discovery that the County was trying to purchase the property as well as pollute it. The County had argued that the amendment was a wrongful attempt to relitigate the failed Tort Claims, or try the inverse condemnation claim in the bankruptcy court, or both.

### 1. County's motion in limine

The parties agreed to bifurcate the County's claims and try the § 523(a)(7) claim first. Prior to trial, the County filed a motion in limine, seeking to exclude three of Ms. Harrington's witnesses: (1) Cheryl Bly-Chester, an engineer, former County planning commissioner, and expert witness who would testify about her experience with the County and knowledge of the affected property; (2) Ronald Briggs, former County District Supervisor who would testify about alleged corruption in County government; and (3) James Parsons, the new owner of the property. The County argued that the proffered testimony would not change the finality of the Fee Orders and that the Superior Court's findings were subject to issue preclusion and could not be challenged based on any alleged new evidence of "unclean hands." In addition, the witnesses' proffered testimony as to the County's "lack of standing" or the inverse condemnation claim had no relevance to the § 523(a)(7) claim.

Ms. Harrington opposed the motion in limine, arguing that she had new evidence regarding the County's efforts to deny and defeat legitimate claims at the process level. She claimed that the County conspired with outside counsel to use the claim process first as a shield from liability and

then as a sword to create the facade that Mr. Nelsen lied about service, using false testimony from County employees about how the County's computer system was foolproof when in fact it was unreliable. Through this false testimony, she argued, the County thwarted proper service of her Pre-Litigation Claim, procured a directed verdict, and obtained an award under CCP § 1038. Accordingly, she argued, the County lacked standing in the dischargeability proceeding under the doctrine of unclean hands.

Ms. Harrington further argued that an award of attorney's fees under CCP § 1038 did not constitute a "fine, penalty, or forfeiture" for purposes of § 523(a)(7). She argued that CCP § 1038's purpose is not to "punish" or "penalize" plaintiffs, but rather to discourage frivolous lawsuits and to compensate blameless public entities for having to defend against them. She argued that the Fee Orders, which provided for reimbursement of the County's litigation expenses, were "compensation for actual pecuniary loss" and, therefore, dischargeable.

The bankruptcy court granted the County's motion in limine, finding that the witnesses' proffered testimony about the merits of the underlying state court action was not relevant to whether the Fee Orders were dischargeable.

### 2.     The § 523(a)(7) trial

The parties agreed to try the § 523(a)(7) claim on submitted exhibits and stipulated facts, without live testimony. In her trial brief, Ms. Harrington argued that no court had determined that her Tort Claims were frivolous. She

7

maintained that she had not engaged in any conduct other than to follow her attorney's advice and trust Mr. Nelsen that he served the Pre-Litigation Claim on the County. She argued that the Superior Court had improperly imputed their alleged wrongful conduct to her.

The County argued that the issue before the court was whether the Fee Orders constituted a "fine, penalty, or forfeiture" under § 523(a)(7), not whether the Fee Orders were properly decided against Ms. Harrington under CCP § 1038. The County argued that the purpose of CCP § 1038 is to impose penalties on litigants who advance frivolous lawsuits against government entities. In short, CCP § 1038 was meant as a punitive, deterrent measure. Relying on *Searcy v. Ada County Prosecuting Attorney's Office (In re Searcy)*, 463 B.R. 888 (9th Cir. BAP 2012), *aff'd*, 561 F. App'x 644 (9th Cir. 2014), which involved a similar Idaho statute, the County argued that the attorney's fees and costs awarded here, just like in *Searcy*, were a penalty imposed against Ms. Harrington for filing and pursuing frivolous litigation against the County, even though the amount of the awards was based upon the County's incurred expenses.

The bankruptcy court ruled that the Fee Orders awarding the County its attorney's fees and costs under CCP § 1038 were a "penalty" and not "compensation for actual pecuniary loss" for purposes of § 523(a)(7). *In re Harrington*, 665 B.R. at 444-46. Consequently, they were nondischargeable.

The court determined that, based on California law, the purpose of CCP § 1038 is to deter and punish frivolous litigation. *Id.* at 444-45. The court

8

found the statute to be the functional equivalent of an award of sanctions under Civil Rule 11/Rule 9011, which serve functions that are corrective, punitive, and designed to be rehabilitative. *Id.* at 445. Therefore, the Fee Orders satisfied the first element of § 523(a)(7). The second element was undisputed – the awards were payable to and for the benefit of the County, a governmental unit of the State of California. *Id.* Finally, as to the third element, the court found that even though the awards were based on actual attorney's fees and costs incurred by the County, this was incidental to CCP § 1038's penal and rehabilitative purpose and did not render the awards compensatory. *Id.* at 445-46.

This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.[5]

## ISSUES

1. Did the bankruptcy court err in granting the County's motion in limine?

2. Did the bankruptcy court err in determining that the Fee Orders under CCP § 1038 were nondischargeable debts under § 523(a)(7)?

---

[5] A ruling on a motion in limine is not a final order because such rulings "are by their very nature preliminary." *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir. 1985). However, the order granting the motion in limine became final and appealable once the dischargeability judgment was entered. *See United States v. Real Prop. Located at 475 Martin Lane*, 545 F.3d 1134, 1141 (9th Cir. 2008) (under the merger rule, interlocutory orders entered prior to the judgment merge into the judgment and may be challenged on appeal).

## STANDARDS OF REVIEW

While we generally review the bankruptcy court's pretrial exclusion of evidence for abuse of discretion, to the extent the court's ruling on a motion in limine precludes the presentation of a defense, we review that ruling de novo. *United States v. Ross*, 206 F.3d 896, 898-99 (9th Cir. 2000).

We review a bankruptcy court's legal conclusions, including its interpretation of the Bankruptcy Code and state laws, de novo. *In re Searcy*, 463 B.R. at 891. De novo review means that we "consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

### A. The bankruptcy court did not err in granting the County's motion in limine.

Ms. Harrington argues that the bankruptcy court erred in excluding witnesses Bly-Chester, Briggs, and Parsons, which effectively precluded her from presenting an affirmative defense of unclean hands in the dischargeability proceeding. Ms. Harrington argues that these witnesses, if allowed to testify, would have revealed wrongdoing by the County that the bankruptcy court could have considered to reassess the facts of the underlying state court action, weigh the parties' respective conduct and credibility, and decide the dischargeability matter in her favor.

Although Ms. Harrington claims she was "a legally blameless debtor subjected to a trap," her culpability under CCP § 1038 was expressly found by

the Superior Court and affirmed by the Court of Appeal. The Superior Court found that she initiated and pursued the Tort Claims without reasonable cause and in bad faith after determining that she knowingly submitted false evidence. Precisely, the Superior Court found that Ms. Harrington knew of the falsities in the proof of service, that she was complicit in its use, and that she knew she had no valid proof of service of the Pre-Litigation Claim prior to filing the complaint. These findings resulted in the Fee Order entered against her. The Fee Order was affirmed on appeal, which led to an additional award of attorney's fees and costs to the County under CCP § 1038.

The bankruptcy court was precluded from determining the issue of Ms. Harrington's conduct that was already litigated and necessarily decided in a final order by the Superior Court and Court of Appeal. *See Florida v. Ticor Title Ins. Co. of Cal. (In re Florida)*, 164 B.R. 636, 640 (9th Cir. BAP 1994) (citing *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991)). New defenses, like unclean hands, were barred by the final Fee Orders. *See id.* (holding that the bankruptcy court could not consider debtor's "new evidence" of his lack of knowledge and culpability in a forgery case decided against him by the state court to challenge that court's findings applicable to his willful and malicious conduct under § 523(a)(6)).

Even if the excluded witnesses had been allowed to testify, their testimony about the propriety of the Tort Claims or the probability of Ms. Harrington's success on her inverse condemnation claim was not relevant to the legal question of whether the Fee Orders granted under CCP § 1038

11

constituted a "fine, penalty, or forfeiture" under § 523(a)(7). Accordingly, the bankruptcy court did not err in granting the County's motion in limine and excluding the testimony.

**B.     The bankruptcy court did not err in determining that the Fee Orders were nondischargeable debts under § 523(a)(7).**

Ms. Harrington argues, without support, that the Fee Orders should have been discharged because CCP § 1038 cannot be a penalty as a matter of law. The County argues that Ms. Harrington failed to raise this issue in her statement of issues on appeal and has therefore waived it, citing *Nilsen v. Neilson (In re Cedar Funding, Inc.)*, 419 B.R. 807, 815 n.10 (9th Cir. BAP 2009). Even if we consider the issue, we disagree with Ms. Harrington.

Section 523(a)(7) provides an exception to discharge for a debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss[.]" Although the bankruptcy court relied heavily on *State Bar of California v. Findley (In re Findley),* 593 F.3d 1048 (9th Cir. 2001), we believe that *Searcy* is directly on point and best supports the conclusion that an award under CCP § 1038 is a noncompensatory "penalty" for purposes of § 523(a)(7). *In re Searcy*, 463 B.R. 888.

*Searcy* involved a similar Idaho statute, Idaho Code § 31-3220A(16), which provides for the mandatory award of reasonable attorney's fees and costs to a respondent for defending a prisoner's civil claims that the court determines are frivolous or malicious, or if the prisoner's action or any part of

the action is dismissed for failure to state a claim. In *Searcy*, the state court awarded the county attorney's office its fees and costs after dismissing some of Searcy's civil claims for failure to state a claim, and determining that his remaining claims were frivolous. Searcy appealed, and the appellate court awarded additional fees and costs under the statute for what it determined was a frivolous appeal. *Id.* at 890-91. The bankruptcy court ruled that both awards were excepted from Searcy's discharge under § 523(a)(7) and (17). *Id.* at 891.

On appeal, Searcy challenged the bankruptcy court's ruling that the debt was a penalty that was not compensation for actual pecuniary loss. The Panel determined that, based on the statute's language and legislative history, Idaho Code § 31-3220A(16) was intended to be penal rather than to provide compensation for actual pecuniary loss, finding that its "primary purpose . . . is to deter prisoners from filing frivolous civil litigation, implemented by imposing attorney's fees and costs as a penalty for prisoners' actions in filing and pursuing such litigation." *Id.* at 893. Thus, the Idaho statute imposed a "penalty" for purposes of § 523(a)(7). *Id.* In addition, although the Idaho statute contained elements indicative of a compensatory function by authorizing awards of actual out-of-pocket costs, the Panel agreed with the bankruptcy court that those "incidental" elements did "not override its primary penal intent." *Id.* at 894-95.

Like the Idaho statute, CCP § 1038 is also mandatory in nature, directing that the court "shall" award upon proof a government entity's

13

"defense costs reasonably and necessarily incurred" in opposing an action brought or maintained without reasonable cause and without a good faith belief that there is a justifiable controversy under the facts and law which warranted the filing of the complaint. CCP § 1038(a). "Defense costs" include "reasonable attorney's fees, expert witness fees, the expense of services of experts, advisers, and consultants in defense of the proceeding, and where reasonably and necessarily incurred in defending the proceeding." CCP § 1038(b).

CCP § 1038 also appears penal in nature based on California case law and legislative history, which recognizes its deterrent, punitive purpose. *See Kobzoff v. L.A. Cnty. Harbor/UCLA Med. Ctr.*, 19 Cal. 4th 851, 857 (1998) (recognizing the statute's punitive purpose by allowing public entities to recover costs defending against frivolous litigation); *Gamble v. L.A. Dep't of Water & Power*, 97 Cal. App. 4th 253, 258-59 (2002) ("The plain purpose of section 1038 is to discourage frivolous lawsuits against public entities by providing public entities with an alternative remedy to a constitutionally proscribed action for malicious prosecution."); *Hall v. Regents of Univ. of Cal.*, 43 Cal. App. 4th 1580, 1587 (1996) (stating that "the recognized purpose of section 1038 is to discourage frivolous lawsuits by allowing blameless public entities to recover their defense costs."); *Curtis v. Cnty. of L.A.*, 172 Cal. App. 3d 1243, 1250 (1985) (in summarizing Assembly Bill No. 3214 (March 11, 1980), which enacted CCP § 1038, the appellate court stated: "the Legislature appears to have intended to discourage frivolous lawsuits against

14

governmental agencies."). Indeed, under the California Tort Claims Act, public entities are precluded from filing malicious prosecution actions, and so CCP § 1038 provides such entities a means "to recover the costs of defending against unmeritorious and frivolous litigation." *Kobzoff*, 19 Cal. 4th at 857.

And, like the Idaho statute, we believe that CCP § 1038's incidental compensatory function of reimbursement of defense costs to a California governmental entity does not override its penal intent. *In re Searcy*, 463 B.R. at 894-85; *see also Cnty. of Dakota v. Milan (In re Milan)*, 556 B.R. 922, 925 (8th Cir. BAP 2016) (noting that *Kelly v. Robinson*, 479 U.S. 36 (1986) and its progeny "make clear that a compensatory element does not render an otherwise penal debt dischargeable. Rather, courts considering whether a debt is compensation for actual pecuniary loss may look to the extent that a debt creates a typical creditor-debtor relationship or represents an expenditure in furtherance of a public governmental duty.") (citing *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)).

Accordingly, we conclude that the bankruptcy court did not err in determining that the Fee Orders were nondischargeable under § 523(a)(7).

## CONCLUSION

For the reasons stated above, we AFFIRM.

15