NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-11-1610-KiDMk |
| ) | |
| SMB GROUP, INC., ) | Bk. No.   11-30426-BR |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| SMB GROUP, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| RICHARD DIAMOND, Former ) | |
| Chapter 7 Trustee of Estates ) | |
| of Union Trim, Inc. and USB ) | |
| Group, Inc., ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on July 20, 2012,
at Pasadena, California

Filed - November 7, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry R. Russell, Bankruptcy Judge, Presiding

_____

Appearances:    David A. Tilem, Esq. of the Law Offices of David A.
Tilem argued for appellant, SMB Group, Inc.;
Matthew F. Kennedy of Danning, Gill, Diamond &
Kollitz, LLP argued for appellee, Richard Diamond.

_____

Before: KIRSCHER, DUNN, and MARKELL, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, chapter 11[2] debtor SMB Group, Inc. ("SMB Group"), appeals an order from the bankruptcy court denying its motion for contempt against appellee, former chapter 7 trustee Richard Diamond ("Trustee"), for his alleged violation of the automatic stay. Because the bankruptcy court did not make sufficient findings under Civil Rule 52(a) to support its decision that Trustee was entitled to judicial immunity, we VACATE and REMAND with instruction that the bankruptcy court conduct a de novo evidentiary hearing.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Facts common to the related bankruptcy cases.**

The following facts are as alleged by Jeff Shin f/k/a In Chul Shin ("Shin"), principal and sole shareholder of SMB Group. Shin is of Korean descent and speaks Korean. He speaks little English. He also does not read or write English.

SMB Group is in the business of performing trim work for the clothing industry, such as sewing buttons, collars, zippers and pockets onto garments. Shin is also the sole shareholder of USB Group, Inc. ("USB"), which was formed in 2003. Until March 18, 2011, USB was in the business of selling commercial grade sewing machinery and equipment. Shin is also one of two

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] After hearing about facts from counsel at oral argument regarding this case that were not submitted in the record either before us or the bankruptcy court, we are even more convinced that remanding this matter for an evidentiary hearing is the proper course of action.

-2-

shareholders of another corporation called Union Trim, Inc. ("Union Trim"). Union Trim apparently ceased operations in 2010 when the other shareholder left the business and could not be located. Shin formed SMB Group to acquire all of Union Trim's assets, including the right to use "Union Trim" as a trade name.

Shin's businesses are located in two adjoining halves of a leased building at 2635 S. Main Street, Suites #A and #B, in Los Angeles, California (the "Premises"). On or about June 25, 2010, USB d/b/a Alpha Sewing Machine obtained a business loan from First Bank. In exchange for the loan, USB executed a promissory note in favor of First Bank for $233,000. The note was secured by an interest in all of USB's inventory, equipment, chattel paper, accounts receivable, and general intangibles. Shin personally guaranteed the loan. USB defaulted on the loan after making just a couple of payments. On February 17, 2011, First Bank sued USB and Shin in state court for breach of contract and sought a writ of possession for USB's personal property.

Faced with financial troubles exacerbated by USB's loan default, Shin sought the advice of legal counsel. After seeing an advertisement in the Korean Times for a firm offering debt relief services, Shin met with attorney Gene Choe ("Choe") at Choe's office on March 3, 2011, in hopes of negotiating a payment plan with First Bank. According to Shin, both Choe and Choe's paralegal advised Shin to file bankruptcy, but Shin declined, directing Choe only to negotiate a payment plan with First Bank. Choe told Shin to return the following day with retainer funds and financial information. Shin returned, paid the retainer, and provided Choe with financial information about himself and his

businesses. During this meeting, Shin was also asked to sign several documents written in English. The documents were not translated for Shin, and, because he considered it disrespectful to do so, Shin did not ask to have the documents translated and signed everything as instructed.

On March 4, 2011, Choe filed three separate chapter 7 bankruptcy cases for Shin (as an individual), for USB, and for Union Trim. No case was filed for SMB Group. Trustee was thereafter appointed in the USB and Union Trim cases. According to Shin, he did not sign any of the petitions or authorize any of the bankruptcy filings. Shin further claims he was unaware of the bankruptcy filings until March 18, 2011, when Trustee's agents appeared at the Premises and shut down the businesses.

**B. The Union Trim and USB bankruptcies.**

**1. Union Trim bankruptcy case.**

The skeletal petition filed for Union Trim listed its place of business in Suite #A of the Premises. It also listed "other" business names used: DBA USB Group, Inc.; DBA Alpha Sewing Machine; DBA SMB Group, Inc.; DBA Union Trim. An "Electronic Filing Declaration" and "Statement Regarding Authority to Sign and File Petition," both of which reflected Shin's handwritten signature, were included with the petition. Choe filed Union Trim's schedules and statement of financial affairs on March 18, 2011. According to its Schedule B, Union Trim had $100,000 worth of sewing machines and parts in its inventory. Union Trim listed no secured creditors and only one unsecured creditor, with a disputed claim in an unknown amount. A § 341(a) meeting of creditors was scheduled for April 13, 2011.

Just three weeks after filing the petition, Choe moved to dismiss the Union Trim case on March 25, 2011. Trustee opposed dismissal, contending that more time was needed to investigate the case as Union Trim's schedules and financial affairs were "woefully inadequate," no one had appeared for the debtor at the § 341(a) meeting of creditors held on April 13, and, despite Union Trim's assertion that it was doing business as "USB Group, Inc.," USB had filed its own chapter 7 petition on the same date as Union Trim. Trustee noted that the relationship, if any, between Union Trim and USB was unclear, and it was not clear whether the assets listed in Union Trim's Schedule B actually belonged to it or to USB. Trustee further noted that his administrator had sent an email to Choe on March 8, before the schedules were filed, asking Choe whether any assets existed that would be of concern to the Trustee, such as cash, inventory, or equipment. After getting no response from Choe, and learning from First Bank that Union Trim was still conducting business, the administrator sent a second email to Choe on March 17 instructing Choe to inform his client that all business operations had to cease immediately. Trustee sent a similar cease and desist email to Choe later that same day. Choe quickly responded, stating that his client would comply with Trustee's demand.

The bankruptcy court denied Union Trim's motion to dismiss at a hearing on May 3, 2011. An order was entered to that effect on May 12, 2011.[4]

[4] Union Trim's case was eventually dismissed on July 28, 2011, for failure to appear at the § 341(a) meeting of creditors. The case was closed on August 25, 2011.

-5-

**2.    USB bankruptcy case.**

The skeletal petition filed for USB listed its place of business in Suite #B of the Premises.  The petition also stated that USB did business as "Alpha Sewing Machine."  An Electronic Filing Declaration, which reflected Shin's handwritten signature, was included with the petition.  No schedules or statement of financial affairs were ever filed for USB.

Just two weeks after filing its chapter 7 petition, Choe moved to convert USB's case to chapter 11 on March 18, 2011. Trustee opposed the motion, contending that USB had wrongfully operated the business postpetition and had failed to cooperate with Trustee in providing any information regarding its assets, liabilities, prepetition transfers, or creditors.  Therefore, argued Trustee, no evidence existed showing that USB was even eligible for chapter 11.  Trustee again referred to the emails sent to Choe on March 8 and 17 and explained that, because both Union Trim and USB had failed to cease operations as instructed, he was forced to send his representative, Ken Roelke ("Roelke"), on March 18, 2011, to shut down their operations, padlock the building, and hire 24-hour security.  First Bank also opposed converting the case.  A hearing on the conversion motion was requested but never held.

On April 18, 2011, USB, with new bankruptcy counsel David Tilem ("Tilem"), filed a second, ex parte emergency motion to convert USB's case to chapter 11.  In its moving papers, USB contended that Shin had not authorized its (or any other) bankruptcy filing, and, other than its debt to First Bank, USB was generally paying its debts as they came due.  USB alleged that in

-6-

Shin's individual case and USB's case, the "blank" Electronic Filing Declaration signed by Shin was first duplicated and then altered by someone to add the names of the debtors.[5] USB also contended that on March 18, 2011, Trustee had not only shut down USB's business, but also the business of nondebtor SMB Group, which does business as "Union Trim," but was not the same company as Union Trim, Inc. Thus, argued USB, Trustee was not only damaging the victimized debtor, but also a business which was not in bankruptcy.

In his declaration in support of USB's second motion to convert, Tilem stated that on April 6, 2011, he called Trustee's office to see if Trustee would stipulate to the conversion, but was unable to reach anyone. Tilem then sent an email to Trustee and the staff attorney assigned to USB's case, Matthew Kennedy ("Kennedy"). Tilem explained that the chapter 7 petitions filed for Shin individually, USB, "and a third business also owned by Mr. Shin - SMB" - had not been authorized, and that Tilem had been hired "to get the SMB case dismissed" and represent USB in chapter 11. Tilem stated that Shin would be unable to prepare schedules unless he was given access to the Premises. In response to Tilem's email, Kennedy stated that Trustee would not stipulate to the conversion, but he would allow Shin access to the Premises so that Shin could review USB's books and records for the purpose of preparing schedules and a statement of financial affairs. On April 15, 2011, Trustee and Tilem spoke by phone. According to Tilem, he told Trustee that the lockdown of USB was also affecting

---

[5] Shin also claimed that his signature on the Electronic Filing Declaration in the Union Trim case had been forged.

-7-

the business of nondebtor, SMB Group, but Trustee responded that Tilem's only evidence of this was his word. Tilem then proposed a meeting with Trustee and Shin, but Trustee refused.

Shin stated in his declaration in support of conversion that on March 18, 2011, when Trustee had shut down his businesses, he went to see Choe to find out what was going on. Choe told Shin about the bankruptcies, and stated that he could help Shin obtain a loan or that he would personally lend him the money. Shin claimed he refused Choe's loan offer, demanded a refund of his retainer funds (of which he recovered $6,000 of the $8,000 paid), left Choe's office, and started looking for another attorney. Shin also stated that during a meeting with Tilem on April 7, 2011, Shin discovered a paper, written in Korean, which said that Shin had completed credit counseling. Shin asserted that he never received credit counseling, and the document contained what Shin claimed was his forged signature. Finally, Shin stated that Trustee's offer to allow him access to the Premises to get information to file bankruptcy schedules was not acceptable because Shin had not authorized the bankruptcy filings, which were destroying the businesses he had built for over 10 years. According to Shin, he was losing customers due to the closure of USB and SMB Group, particularly those whose inventory was locked inside.

On April 19, 2011, the bankruptcy court entered an order denying USB's emergency motion to convert for failing to file schedules, a statement of financial affairs, and other required documents, and because the first motion to convert, which was opposed by Trustee and First Bank, was never set for hearing. In

-8-

response to the order, USB set a hearing on its second motion to convert for May 13, 2011. However, before the hearing could take place, USB withdrew its conversion motion on April 26, 2011.[6]

On April 29, 2011, USB moved to dismiss its chapter 7 case based on the unauthorized filing. USB's moving papers were virtually identical to those filed for its motion to convert. The only notable exception was a declaration filed by Sylvia Lew, Tilem's associate attorney. She stated that in both the USB and Union Trim bankruptcies no corporate resolution had been filed indicating that either company's Board of Directors had authorized the bankruptcy filings.

Trustee filed his opposition to the dismissal motion on May 17, 2011. Trustee contended that, despite Shin's unsubstantiated victimization story, USB had failed to comply with its duties under the Code to date, including failing to provide Trustee or the court with any information regarding its assets, liabilities, or creditors. Trustee noted that his offer to Shin on April 15, 2011, to gain access to books and records so that he could complete USB's schedules and statement of financial affairs had been rejected. Trustee further noted that all three debtors - Union Trim, USB, and now SMB Group (which had just filed a chapter 11 bankruptcy on May 12, 2011) were listed as having the same address and principal, and he opposed dismissal because he needed more time to determine which debtor owned what assets, since no papers had been filed with the court which could answer

---

[6] While USB's conversion motion was pending, First Bank had moved for relief from stay to foreclose on its interest in USB's personal property. That motion was granted on April 21, 2011.

this question.  First Bank joined Trustee's opposition.

USB filed its reply on May 23, 2011, contending that it would never voluntarily cooperate in a bankruptcy it did not authorize or initiate, either by completing schedules or appearing at a § 341(a) meeting of creditors.  USB rejected Trustee's argument that he could not distinguish what assets belonged to which debtor.  First, argued USB, the businesses were in two different halves of the Premises.  Second, USB had already informed Trustee that Union Trim had no assets; all of its assets had been sold to SMB Group when Union Trim's other shareholder disappeared, and those assets were property of SMB Group's chapter 11 estate.

After a hearing on the matter, and upon USB's agreement not to file another bankruptcy case for 365 days, the bankruptcy court entered an order granting USB's motion to dismiss on May 31, 2011.[7]

**C.   SMB Group bankruptcy.**

Meanwhile, with Shin's authorization, SMB Group filed a chapter 11 bankruptcy on May 10, 2011.  SMB Group listed its place of business in Suite #B of the Premises.  In its schedules, SMB Group listed no assets but several unsecured creditors.

On May 24, 2011, SMB Group moved for an order finding Trustee in contempt under § 105 for violating the automatic stay under § 362(a)(3)(the "Contempt Motion").  SMB Group claimed that it was damaged when Trustee seized and refused to turn over what SMB Group alleged was its property located at the Premises.

---

[7] Shin's personal bankruptcy case was dismissed on May 2, 2011, for non-appearance at the § 341(a) meeting of creditors. His case was closed on June 24, 2011.

-10-

SMB Group contended that Trustee had refused to permit Shin access to the Premises to identify SMB Group's property, he had refused to cooperate in any effort to separate the property of SMB Group from that of USB, and he had failed to take any action to separate the assets of the two entities even though he had exclusive control over the books and records to help sort out any confusion. SMB Group argued that damages included not only the value and lost profits of its business, but also the fees and costs incurred filing the chapter 11 case, which was the proximate result of Trustee's actions.

In support of the Contempt Motion, SMB Group submitted declarations from Tilem and Shin, and various documents reflecting communications between Tilem and the Trustee's office. In a letter dated May 11, 2011, Tilem advised Kennedy that SMB Group had filed chapter 11 and requested that Trustee immediately release and turn over all property owned by SMB Group, which was located in Suite #B of the Premises. Tilem offered to provide Trustee with a partial inventory list of assets. Kennedy's response letter, dated May 12, 2011, stated that Trustee was willing to cooperate regarding this issue, however, he could not turn over any property without the promised inventory list and proof of SMB Group's ownership. In an email from Tilem to Kennedy dated May 13, 2011, Tilem attached a list identifying some of the equipment Shin asserted belonged to SMB Group, at least what Shin could recall without access to the Premises. Tilem asserted that basically everything in Suite #B belonged to SMB Group or one of its customers, so he saw no basis for any further delay in releasing the contents of Suite #B. Later that same day, Tilem

-11-

sent an email to Kennedy stating that he was incorrect about the Suite #B reference; SMB Group's business was actually located in Suite #A. Kennedy responded by email on May 16, 2011, informing Tilem that, due to prior history and the uncertainties regarding this case and the related cases, Trustee would neither grant access to, nor turn over, any personal property in the absence of a court order. Tilem's final email to Kennedy, dated May 20, 2011, demanding that Trustee turn over SMB Group's property, went unanswered.

In his opposition to the Contempt Motion, Trustee contended that his actions were within the scope of his duties and protected by judicial immunity. Trustee argued that due to the allegations of unauthorized filings and forgeries with respect to the related bankruptcy cases, he had a duty to act with great care and caution, and consequently he could not be held responsible for willfully violating the automatic stay for acting in accordance with his duties and responsibilities. Specifically, Trustee contended that he was justifiably uncertain about title to and ownership of the property at the Premises given the absence of schedules in the related cases, Shin's refusal to cooperate, the multiple filings, and the purported use of the same business names by multiple entities sharing common business premises. In Trustee's opinion, Shin's one-page list of equipment, with scribbled notes, was wholly inadequate to substantiate SMB Group's ownership of the property.[8] Thus, contended Trustee, he was

---

[8] SMB Group later filed an amended Schedule B on May 31, 2011, which listed the same personal property identified in the list Shin had provided to Trustee.

-12-

justified in requiring a court order for turnover, as he had with Golden Textile, Inc.,[9] before turning over any of the property that may or may not have belonged to SMB Group.

Alternatively, Trustee argued that no violation of the automatic stay occurred because he had not wrongfully exercised control or obtained possession of property belonging to SMB Group's estate. Trustee noted that on June 2, 2011, shortly after USB's case was dismissed, his counsel personally gave Shin the key to the Premises, and, on June 3, 2011, Roelke had met with Shin at the Premises to inspect the property and turn it over.

In addition to the opposition, Trustee filed an evidentiary objection to various statements made in Shin's declaration on the grounds of hearsay, lack of foundation and personal knowledge, argument, best evidence rule, and relevance.

In his declaration in support of Trustee's opposition to the Contempt Motion, Roelke, who had closed down the businesses on behalf of Trustee on March 18, stated that based on the layout of the Premises there was no way to discern what property belonged to which entity. Roelke further stated that business was conducted by both USB and Union Trim from the same Premises, with only a curtain separating them, and that the assets of the two entities

---

[9] On May 11, 2011, the bankruptcy court entered an order in the Union Trim case approving a stipulation for turnover between Trustee and Golden Textile, Inc. Golden Textile, Inc. was a customer of Union Trim which had materials locked inside the Premises. Trustee stated that Golden Textile, Inc. had complied with his request to establish ownership of the materials, so he agreed to turn them over.

-13-

were commingled.[10]

In its reply brief, SMB Group contended that judicial immunity, if it even applied, likely covered only those actions Trustee took on March 18 when he seized the Premises; it did not cover his actions after May 10 (and up until June 2, 2011) of refusing to investigate, meet with Shin, or turn over the property he seized which belonged to SMB Group. These actions, argued SMB Group, fell outside the scope of Trustee's authority, and therefore immunity did not apply. SMB Group further contended that Trustee's evidentiary objections should be overruled.

A very short hearing on the Contempt Motion was held on October 4, 2011. As to Trustee's evidentiary objections, the bankruptcy court stated:

> Well, actually the evidentiary -- I will rule but as in most cases, not all, but in many that's not going to make a difference because I understand what happened. I am going to overrule the first but I am going to sustain the rest of the objections. But as I say, given the nature of this case still the facts are what they are.

Hr'g Tr. (Oct. 4, 2011) 1:19-24. The parties declined the opportunity to present further argument. Thereafter, the bankruptcy court entered its ruling orally on the record in favor of Trustee:

> . . . I am going to deny the motion. I think it probably is immunity but even setting that aside this has been a very unusual case and a lot quite frankly has been caused by the principals of the Debtor. If I were in the trustee's position I would have done exactly the same. So, I'll just leave it at that.

---

[10] Trustee's counsel acknowledged at oral argument before us that actually a demising wall, as opposed to a curtain, separated the entities at the Premises.

-14-

*Id.* at 2:5-10. When counsel for SMB Group asked the court to enter findings due to a probable appeal, the bankruptcy court replied:

> All right. Then, in that case I will rule that there is immunity to begin with but even if there weren't it wouldn't make any difference. At the end of the day, my findings are very specific that given the circumstances, as laid out by the way in the response from the trustee, given those circumstances the conduct was totally justifiable and I'll leave it at that.

*Id.* at 2:16-24.

The bankruptcy court entered an order denying the Contempt Motion on October 18, 2011 ("Contempt Order"). SMB Group timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining that Trustee had immunity?

2. Did the bankruptcy court abuse its discretion in denying the Contempt Motion?

3. Did the bankruptcy court abuse its discretion in its evidentiary rulings?

## IV. STANDARDS OF REVIEW

Whether property is included in a bankruptcy estate is a question of law subject to de novo review. Sticka v. Lambert (In re Lambert), 283 B.R. 16, 18 (9th Cir. BAP 2002).

Whether the automatic stay provisions of § 362 have been violated is also a question of law reviewed de novo. Del Mission Ltd. v. Traxel, 98 F.3d 1147, 1150 (9th Cir. 1996).

-15-

The bankruptcy court's conclusions of law regarding the immunity of a bankruptcy trustee are reviewed de novo, while findings of fact are reviewed for clear error. Curry v. Castillo (In re Castillo), 297 F.3d 940, 946 (9th Cir. 2002)(citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1205 (9th Cir. 2001)).

An award or denial of sanctions under § 105(a) is reviewed for abuse of discretion. Nash v. Clark Cnty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012)(citing Missoula Fed. Credit Union v. Reinertson (In re Reinertson), 241 B.R. 451, 454 (9th Cir. BAP 1999)).

The bankruptcy court's evidentiary rulings are reviewed for an abuse of discretion. Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship, 106 F.3d 1465, 1467 (9th Cir. 1997).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

## V. DISCUSSION

**A. The bankruptcy court did not make sufficient findings for a meaningful review.**

**1. Applicable bankruptcy law.**

Upon the filing of a bankruptcy petition, an estate is created comprised of all legal or equitable interests of the

-16-

debtor in property, wherever located or by whomever held, as of the commencement of the case. § 541(a)(1). Furthermore, while § 541 sets forth what interests of the debtor must be transferred to the bankruptcy estate, it does not address "'the threshold questions of the existence and scope of the debtor's interest in a given asset.'" Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1084 (9th Cir. 1998)(quoting State of Cal. v. Farmers Mkts., Inc. (In re Farmers Mkts., Inc.), 792 F.2d 1400, 1402 (9th Cir. 1986)). Rather, the bankruptcy court must look to state property law to determine whether, and to what extent, the debtor has any legal or equitable interests in property as of the commencement of the case. Id. (citing Butner v. United States, 440 U.S. 48, 55 (1979)).

The filing of the bankruptcy petition also creates an automatic stay under § 362(a), which operates to enjoin, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3).

Under § 542(a), an "entity," other than a custodian, who possesses or is in control of property of the estate on the date the bankruptcy petition is filed has an obligation to turn that property over to the debtor or to the trustee. The same is true for "custodians" under § 543(b).[11] An entity "who fails to return the estate's property after it knows of the debtor's bankruptcy is

_____

[11] Trustee would appear to be an "entity" subject to § 542(a). An "entity" is defined as including a "person." § 101(15). A "person" includes an "individual." § 101(41). A chapter 13 trustee has been determined to be an "entity" for purposes of § 542(a), but not a "custodian" for purposes of § 543(b). Resendez v. Lindquist, 691 F.2d 397, 398 (8th Cir. 1982).

-17-

subject to sanction for willful violation of the automatic stay." Expeditors Int'l of Wash., Inc. v. Colortran, Inc. (In re Colortran, Inc.), 210 B.R. 823, 826-27 (9th Cir. BAP 1997), aff'd in part and vacated in part on other grounds, 165 F.3d 35 (9th Cir. 1998); Abrams v. Sw. Leasing and Rental Inc. (In re Abrams), 127 B.R. 239, 241-43 (9th Cir. BAP 1991)(creditor's continuing retention of repossessed vehicle after receiving notice of bankruptcy violated automatic stay).  See also Sternberg v. Johnston, 595 F.3d 937, 943-45 (9th Cir.), cert. denied, 131 S.Ct. 180 (2010)(automatic stay imposes on nondebtor parties an affirmative duty of compliance, and to comply with the affirmative duty under the automatic stay a nondebtor party must do what it can to relieve the violation).  "'To effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor.'"  Hayden v. Wells (In re Hayden), 308 B.R. 428, 432 (9th Cir. BAP 2004)(quoting Del Mission, 98 F.3d at 1151).

Section 362(k) permits sanctions for willful violations of the automatic stay under § 362(a).  "A willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional."  Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215 (9th Cir. 2002)(citing Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992)).  Once a party has knowledge of the bankruptcy, it is deemed to have knowledge of the automatic stay.  See Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 589 (9th Cir. BAP 1995).

However, § 362(k) only allows an "individual" to recover damages for violations of the automatic stay; corporations are not

-18-

"individuals" for purposes of § 362(k). In re Goodman, 991 F.2d 613, 616 (9th Cir. 1993)(analyzing the former § 362(h)). Nonetheless, a corporation may recover contempt sanctions for violations of the stay under § 105. Id. Damages under § 362(k) are mandatory, whereas damages are discretionary for civil contempt under § 105. In re Colortran, Inc., 210 B.R. at 828 (analyzing the former § 362(h))(citing In re Goodman, 991 F.2d at 616). Under civil contempt, the moving party must prove by clear and convincing evidence that the offending party violated the stay order. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003).

**2.   Quasi-Judicial Immunity.**

Trustee contended that his actions were protected by judicial immunity. Historically, judges have been granted absolute immunity from suits for their judicial acts. Nilsen v. Neilson (In re Cedar Funding, Inc.), 419 B.R. 807, 822 (9th Cir. BAP 2009)(citing Forrester v. White, 484 U.S. 219, 225-28 (1988)). Quasi-judicial immunity is an offshoot of judicial immunity and extends to nonjudicial officers for "'all claims relating to the exercise of judicial functions.'" Id. (quoting In re Castillo, 297 F.3d at 947).

The United States Supreme Court in Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993), set forth a two-part test for determining whether a nonjudicial officer is entitled to quasi-judicial immunity. The first prong requires the court to inquire thoroughly into the immunity historically given to the relevant official at common law and the public interest behind it. Id. at 432. The Ninth Circuit has conducted this inquiry and has

-19-

concluded that bankruptcy trustees are afforded quasi-judicial immunity because they perform some functions which are judicial in nature.  In re Castillo, 297 F.3d at 950.

The second prong requires a court to examine whether immunity covers the trustee's functions at issue.  Id. at 949.  Questions regarding a trustee's immunity under this prong are decided on a case-by-case basis because not all "'of the trustee's many functions are covered by absolute quasi-judicial immunity.'" In re Cedar Funding, Inc., 419 B.R. at 822 (quoting In re Castillo, 297 F.3d at 953).  Trustees may only be "'immune for actions that are functionally comparable to those of judges, i.e., those functions that involve discretionary judgment.'"  Id. (quoting In re Castillo, 297 F.3d at 947)(citing Antoine, 508 U.S. at 436).  The focus on whether a particular function is judicial in nature is on the "ultimate act," not the constituent parts of the act.  In re Castillo, 297 F.3d at 952.

A chapter 7 bankruptcy trustee's duties are set forth in §§ 323 and 704.  In general, the trustee must: collect and liquidate property of the estate; be accountable for the estate; ensure that the debtor performs his or her obligations; investigate the financial affairs of the debtor; review proofs of claim; oppose the debtor's discharge if necessary; furnish relevant information to parties in interest; and by court order, operate the debtor's business on a short-term basis. § 704(a)(1)-(8).  The trustee also must prepare the final report and an accounting for the administration of the estate. § 704(a)(9).

It has long been established that bankruptcy trustees are

entitled to quasi-judicial immunity from liability for actions carried out within the scope of the their official duties. Kashani v. Fulton (In re Kashani), 190 B.R. 875, 883 (9th Cir. BAP 1995)(citing Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989); Mullis v. United States Bankruptcy Court for Dist. of Nev., 828 F.2d 1385, 1390-91 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988); Read v. Duck (In re Jacksen), 105 B.R. 542, 544 (9th Cir. BAP 1989)).  "A trustee is entitled to such immunity only if the trustee is acting within the scope of authority conferred upon the trustee by the appropriate statute(s) or the court." In re Kashani, 190 B.R. at 883 (citing In re Jacksen, 105 B.R. at 545 and Cent. Transp., Inc. v. Roberto (In re Tucker Freight Lines, Inc.), 62 B.R. 213, 217 (W.D. Mich. 1986)).  Trustees are not immune for intentional violation of duties imposed upon them by law.  Bennett, 892 F.2d at 823.[12]

A trustee can be personally liable for seizing or failing to turn over property in possession of the estate but owned by someone else, which is considered an ultra vires act.  See, e.g., Leonard v. Vrooman, 383 F.2d 556 (9th Cir. 1967), cert. denied, 390 U.S. 925 (1968).  This is true even if the trustee had ample reason to believe that a preferential transfer or a transfer in fraud of creditors had occurred.  Id.

---

[12] Although the Ninth Circuit has held that trustees are not immune for their negligent violation of duties imposed by law (see United States v. Hemmen, 51 F.3d 883, 891 (9th Cir. 1995) and Bennett, 892 F.2d at 823), it has subsequently held that trustees are not liable for negligent acts when immunity applies.  In re Castillo, 297 F.3d at 953 ("Because we decide that [the trustee] is entitled to immunity, we need not reach Castillo's argument that bankruptcy trustees may be liable for negligence."). However, since Trustee's actions here were intentional, whether he is immune from any negligent acts in this case is not relevant.

-21-

**3. Analysis.**

SMB Group had the burden to show that Trustee violated the automatic stay. It, however, first needed to request the bankruptcy court to determine whether the disputed property held by Trustee was property of SMB Group's bankruptcy estate. Trustee had the burden of showing that he was entitled to quasi-judicial immunity. In addition to assigning error by the bankruptcy court in ruling that Trustee was entitled to quasi-judicial immunity for his conduct, SMB Group contends that because the bankruptcy court made little to no findings on the issues at hand, the case should be remanded. We agree.

The Contempt Motion was a "contested matter" subject to Rule 9014. See Rule 9020. Rule 9014 incorporates the provisions of Civil Rule 52, which requires that findings and conclusions be stated on the record after the close of the evidence or to appear in an opinion or memorandum of decision filed by the court. Specifically, in an action tried on the facts without a jury, "the court must find the facts specially and state its conclusions of law separately." Civil Rule 52(a)(1), incorporated by Rule 7052.

These findings must be sufficient to indicate the factual basis for the court's ultimate conclusion. Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985). The findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision. Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 815 (9th Cir. 2003); Unt, 765 F.2d at 1444.

Review of the bankruptcy court's ruling here is difficult

-22-

because no detailed findings of fact or conclusions of law exist, either on the record or in a separate opinion or memorandum decision. At the hearing on the Contempt Motion, the bankruptcy court initially denied the motion because immunity "probably" applied. After counsel for SMB Group pressed for more findings in light of a probable appeal, the bankruptcy court found that immunity did apply, or, alternatively, that Trustee's conduct, as set forth in his opposition to the Contempt Motion, was justifiable. Contrary to the bankruptcy court's statement that its findings were "specific," the court made no findings of fact and summarily concluded that immunity applied. Adopting Trustee's brief as the court's findings does not comply with Civil Rule 52(a). This failed procedure inadequately supports the court's decision to deny the Contempt Motion.

We further note that the bankruptcy court made no findings as to whether SMB Group or some other entity owned the property at issue, which would necessarily preface the determination of whether a stay violation occurred. In order to make a determination as to the ownership of the property, an adversary proceeding is required under Rule 7001(2). See Jahr v. Frank (In re Jahr), BAP No. EW-11-1538, 2012 WL 3205417, at *4 (9th Cir. BAP Aug. 1, 2012)(citing Brady v. Commercial W. Fin. Corp. (In re Commercial W. Fin. Corp.), 761 F.2d 1329, 1336-38 (9th Cir. 1985); Cogliano v. Anderson (In re Cogliano), 355 B.R. 792, 804-05 (9th Cir. BAP 2006); and In re Colortran, Inc., 218 B.R. at 510-11. Upon further evidentiary proceedings, if the bankruptcy court finds that SMB Group owns the property as claimed, it then needs to determine whether Trustee's act of not turning it over to

SMB Group violated the stay.  If Trustee's conduct did violate the stay, the bankruptcy court must determine whether such conduct was protected by immunity.  If it was not, SMB Group would appear to have a claim for contempt, as long as it can prove damages.

Findings of fact and conclusions of law are essential to appellate review of the Contempt Order.  In the absence of complete findings, we may vacate a judgment and remand the case to the bankruptcy court to make the required findings.  See United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005).  Accordingly, we VACATE the Contempt Order and REMAND with instruction that the bankruptcy court conduct proceedings consistent with this memorandum.

**B.    The evidentiary rulings.**

Because we are vacating and remanding this matter for further proceedings, we need not reach the issue of whether the bankruptcy court abused its discretion in its evidentiary rulings.  We do note, however, that many of Shin's statements made in his declaration in support of the Contempt Motion and objected to by Trustee had already been made in Shin's declaration submitted with the second motion to convert USB's case to chapter 11 on April 18, 2011.  Trustee raised no objections to Shin's declaration in that case.  Thus, it would appear that many of Trustee's objections to Shin's declaration in support of the Contempt Motion, which the bankruptcy court sustained, had actually been waived.  See Local Bankruptcy Rule 9013-1(i)(2): "An evidentiary objection may be deemed waived unless it is (A) set forth in a separate document; (B) cites the specific Federal Rule of Evidence upon which the objection is based; and (C) is filed with the responsive or reply

papers."

## VI. CONCLUSION

Based on the foregoing reasons, we VACATE and REMAND with instruction that the bankruptcy court conduct proceedings consistent with this memorandum.

-25-